Henry Carrington and Chauncey Whittelsey
*against* Enoch Parsons.

MOTION for a new trial.

This was an action on the case against *Parsons*, as sheriff of the county of *Middlesex*, for the escape of *David Willcox*.

The defendant pleaded that after the commitment of *Willcox*, the plaintiffs were notified to appear at the gaol on the 26th of *December*, 1807, before *Oliver Wells*, Esq. a justice of the peace, who, after hearing the parties, admitted *Willcox* to the poor prisoner's oath: that *Willcox* remained 36 hours afterwards in gaol, and no money having been left with the gaoler for his support, and the plaintiffs having explicitly informed *Willcox* and the gaoler, that they should leave none, *Willcox* departed, as well he might.

The poor prisoner's oath was administered by a justice to the debtor; the creditor deposited a sum of money with the gaoler for his support, and appealed; the court of revision decided against the allowance of the oath, and ordered the support to cease; after which the oath, on the application of the debtor, was, a second time, administered to him by a justice; the creditor made no new deposit or appropriation, but a balance of the sum before deposited remained in the gaoler's hands, without having been countermanded; and before the same was expended, the debtor departed from prison, and went at large: Held, that this was an escape.

The plaintiffs replied, that as soon as the oath was administered, to wit, on the 26th of *December*, 1807, they left 10 dollars with the gaoler, for the support of *Willcox*, and while the same was in his hands for that purpose, the defendant suffered *Willcox* to escape.

This was traversed by the defendant. Issue being joined thereon, the jury found a verdict for the plaintiffs. On the trial, the plaintiffs proved, in support of the issue, that on the 7th of *November*, 1807, the poor prisoner's oath was administered to *Willcox*, by *Smith Clark*, Esq. a justice of the peace, and, on the same day, the plaintiffs deposited with the gaoler 10 dollars for the support of *Willcox*, and appealed from the justice's decision to the judge of the county court, and a justice of the *quorum;* who, on the 19th of *November*, adjudged the support to cease. *Willcox* was thereafter held in prison, at his own expense, until the 26th of *December* following, when the oath was again administered to him by *Oliver Wells*, Esq. as stated in the defendant's plea. The plaintiffs were duly notified to appear and oppose the administration of the oath, but made no opposition, and deposited no money, except that which had been deposited on the 7th of *November*, and which yet remained in the gaoler's hands. Whereupon the question arose, whether said sum was, in *fact* or in *law*, appropriated by the plaintiffs for the support of *Willcox* in prison? And there was no proof that any appropriation was in *fact* made, otherwise than as aforesaid. The court, in their charge to the jury, instructed them, that if they should find, that said sum of 10 dollars, or any part thereof, remained in the hands of the gaoler, at the time *Willcox* left prison; or, that it had never been taken out of the hands of the gaoler, by the directions of the plaintiffs, and the appropriation had never been countermanded by them, the jury must find a verdict for the plaintiffs.

A verdict being found accordingly, the defendant moved for a new trial on the ground of a misdirection.

*Hosmer* and *Clark*, in support of the motion.

1. The evidence does not support the issue. The issue is, that money was deposited on the 26th of *December*. The evidence was, of a deposit on the 7th of *November*. Though not so great strictness is required now as in ancient times, yet every court which carries with it the authority of precedent will insist upon a reasonable certainty in its proceedings. In this case, the *amount* of the sum deposited, and the *time* when the deposit was made, are material. Nor does it make any difference that they are stated under a *videlicet*. Where an averment is material, the introduction of a *videlicet* does not render it immaterial. *Skinner* v. *Andrews*, 1 *Saund.* 169. *Grimwood* v. *Barrit*, 6 *Term Rep.* 460. *Carlisle*, *qui tam*, v. *Trears*, *Cowp.* 671. In the case last cited, which was an action *qui tam* upon the statute of usury, there was a variance of only two days between the date of the usurious contract alleged and that proved; and yet Lord *Mansfield*, who was certainly no great stickler for mere forms, held that the variance was fatal.

2. The money deposited with the gaoler, on the 7th of *November*, was not a deposit for the support of the debtor after an oath administered on the 26th of *December*. By the decision of the court of revision on the 19th of *November*, the previous oath, deposit, and all the proceedings, were annulled. It was then to be considered, that there had been no oath, no deposit, &c. and though the money of the creditors, in fact, remained in the hands of the gaoler, yet it was not, in contemplation of law, deposited for the support of the debtor. It is evident, that from the 19th of *November* to the 26th of *December*, the creditors could not intend the balance remaining to be applied to the support of the debtor; for they could

not suppose that any support could be required from them. There could be no appropriation under the second oath by *implication;* if there was none in fact, there was none in law.

3. The sheriff was placed in a dilemma, by the act or omission of the plaintiffs, and might take either alternative, provided he did not act unreasonably, or *mala fide.* The sheriff had good reason to suppose that the plaintiffs did not mean to keep the debtor in confinement. He was to deliver himself from no obscure ambiguities. *Ais te Romanos vincere posse,* was no rule for him. He was not bound to explain any *Delphic* responses. He had as good reason to think he should subject himself by retaining the debtor, as by releasing him.

4. It may, perhaps, be contended, on the other side, that after the court of revision had ordered the prisoner's support to cease, the oath could not be administered a second time by a justice. But why not? The justice, in that case, has jurisdiction of the person and of the subject matter. He is not *excluded* from acting; he is, therefore, *empowered* to act. The law means to provide for the liberation of poor prisoners, whenever they have nothing with which to pay their debts, or support themselves. There may be good reason for a second application for the oath, where the prisoner, in an intermediate stage, has lost his property. Suppose a prisoner owns a small house at the time the oath is administered to him; the creditor appeals, and the court of revision are of opinion that his house is worth more than seventeen dollars, and order his support to cease; soon afterwards, that house is reduced to ashes, and the prisoner has not a cent left; shall he lie in gaol for ever without support?

*Daggett* and *C. Whittelsey,* contra. The first point which has been made by the defendant's counsel, is involved with, and depends upon, the decision of the se-

cond; for if there was nothing done by the creditors, subsequent to the administration of the oath, the first time, which operated as a revocation of the appropriation, or rendered it void, then the evidence did support the issue. What was done by the creditors in relation to this subject? They appealed from the decision of the justice who first administered the oath. But no act of a party in pursuing a legal remedy, in the mode prescribed by law, can operate as a revocation of any previous act done by him. The taking an appeal, or bringing a writ of error, and obtaining a reversal of judgment, has no other effect than to render such judgment inoperative. If it were to revoke or render void the act of the party, no action for a malicious prosecution, or a vexatious suit, could be sustained; for the final judgment revoking the act of the party, as well as all legal proceedings, would leave no ground of action.

But allow, that in this case, the judgment of the court of revision rendered the judgment of the justice void; then the case stands thus : The debtor is committed to prison, and before the creditors are summoned, and the oath administered, the creditors deposit with the gaoler a sum of money for the support of the debtor; the debtor takes the oath; the gaoler, having money in his hands for the support of the debtor, is bound to apply it to that purpose.

The words of the statute are, " The keeper of the gaol shall not stand charged with such prisoner, unless the creditor shall allow him a weekly maintenance."(a) The statute certainly does not require the creditor to deposit the money at the moment the debtor takes the oath; but that he shall "allow him a maintenance;" and a reasonable construction requires, that the maintenance should be so allowed, that the debtor shall not suffer for the want of it. How, then, can the sheriff

June, 1809.

CARRING-
TON
v.
PARSONS.

(a) *Stat. Conn.* tit. 81. c. 1. s. 14.

June, 1809.

CARRING-
TON
v.
PARSONS.

say, that the creditor has not allowed a maintenance, when his gaoler has money in his hands for that very purpose?

The money being deposited with the gaoler for the maintenance of the debtor, it is no longer the money of the creditor, but is in the custody of the law, for the purposes of the law. The creditor has made the requisite disbursement; the law makes the application. The creditor has no longer any control over the money deposited, unless he makes an express countermand; and *that* must necessarily be with the knowledge of the gaoler.

The third point made by the defendant's counsel is one which may be made, and urged in the same manner, in every case of misfeasance or negligence of a sheriff. A plausible excuse will be always at hand. The sheriff will always be *in a dilemma*. All that has been said under this head is answered, by simply stating, that the sheriff is strictly liable for all his official conduct. He is a ministerial officer. He is not to be excused for his ignorance of the law.

But we contend, that there is no ground for a new trial, because an oath cannot be administered in any case whatever, after a decision against the prisoner by the court of revision. The statute makes no provision for a second application to a single justice; and it is to be remembered, that the whole proceedings relative to the poor prisoner's oath depend entirely upon the statute. They are wholly in derogation of the common law. The maxim, *interest reipublicæ ut sit finis litium*, applies forcibly in this case. Upon the doctrine contended for by the defendant's counsel, the debtor may apply successively to every justice in the county. This would be extremely oppressive to the creditor, and an intolerable evil in society.

BY THE COURT. It is admitted, that the plaintiffs deposited with the gaoler the sum of 10 dollars for the

June, 1809.

CARRING-
TON
v.
PARSONS.

maintenance of *Willcox* in prison, on his first taking the oath allowed to poor prisoners by the statute. This is a good appropriation of the money to that use. The intervening circumstances made no alteration. If any part of that money remained unexpended, at the time he was allowed to depart from the prison, and go at large, he had no right to be discharged, and his departure was an escape. On these grounds, we consider the charge to the jury as correct.

New trial not to be granted.